Next is Fallstone v. Commissioner. May it please the Court, my name is Michael Savage. I represent Fallstone. When Congress wrote Section 28A, it wasn't focusing on a company like Fallstone. It was focusing on individuals who were residing in the Virgin Islands and on corporations incorporated there. And when you consider what Section 28A means to those kinds of persons, its meaning actually becomes quite clear. Section 28A says the VI inhabitants satisfy their, quote, income tax obligations under applicable taxing statutes of the United States, end quote, by paying tax to the VI. And the Commissioner says that this clause refers to how much tax you owe under the unmirrored code. A dollar amount of tax under the code as an effect in the United States, which has to be paid to the VI. But to a VI individual, that's not what that clause means. First, to a VI individual, the term applicable taxing statutes of the United States doesn't just refer to the unmirrored code. Because when this law was written in 1954, he was subject to two statutes. He was subject to the mirrored code, and he was subject to the unmirrored code. Those are both U.S. taxing statutes. And to him, the term applicable taxing statutes means both of those taxing statutes because they both applied to him. Now, second, the VI individual certainly does not agree that VI inhabitants actually have to figure out how much tax they owe under the unmirrored code and pay that amount of tax to the VI. Why are you proceeding on an analysis of a VI individual? That's not the status that your client occupied. I understand, Your Honor. But I think the statute means the same thing to the VI individual as it does to Falstone. Okay. If it means the same thing, then I would appreciate it if you would interpret the statute in light of how it affects Falstone instead of a hypothetical VI individual. I'll be happy to do that, Your Honor. The problem is that when Congress wrote the statute, it wasn't thinking about Falstone. So it's a little bit hard to understand how the statute was intended to apply to Falstone. In my view, the statute says that a VI inhabitant satisfies his or its tax obligations under all of the statutes that apply to that inhabitant, which include the mirrored code and the unmirrored code, by paying tax to the Virgin Islands. On what? On what income? On income from all sources, both within and without the Virgin Islands. So under your analysis of the code as it existed, a VI inhabitant would pay to the VI any money for income that was attributable to United States sources? No. Sources in the United States? A VI inhabitant? No. A person in Falstone's position who was situated in the VI, yet a U.S. corporation. That kind of an entity, a VI inhabitant, which was a U.S. corporation, files tax returns in the VI under Section 28A, and it pays tax to the VI under the mirrored code. And what does that mean as a practical matter? Then what income is taxed? As a practical matter, what that means is that it's income from sources. It means that all of its passive income is taxable in the Virgin Islands. And when you say passive income, how? Non-business income. Non-business income. Non-business income. And then what happens with the business income? Business income from sources within the VI is taxed in the VI. Right. And business income from sources outside the VI is not taxed. Okay. So your bottom line is that for a U.S. corporation, which is a VI inhabitant, no taxes on U.S.-generated income should apply. That's your argument. That's my argument. Okay. That's what I thought. The Third Circuit usually has responsibility in Virgin Islands cases. Is that right? That's correct. And they decided the case contrary to your view in Danbury v. Olive. That's correct. Is that right? That's correct. And the fallacy of the Third Circuit argument, I believe, as I was trying to show when I was going through how this affects an individual in the Virgin Islands, was that it assumed that income tax obligations under applicable taxing statutes meant your specific income tax obligation under the unmerit code, under the code in effect in the United States. And I'm trying to show that it doesn't mean that, because when you look at that from the point of view of a VI inhabitant, it doesn't always work right. Take a VI inhabitant. To give you an example, take a VI individual who owns an S corporation, a VIS corporation. Under the unmerit code, that VIS corporation is a foreign corporation from the point of view of the unmerit code. It's a foreign corporation. It doesn't qualify as an S corporation. So when this individual gets a dividend distribution from his VIS corporation, not only is he taxable on those earnings under either the merit code or the unmerit code, he doesn't much care. He knows he has to pay tax on those earnings. But under the unmerit code, his VI corporation is also taxable on those earnings, because it's not an S corporation under the unmerit code. So does that mean that the VI corporation and the VI individual pay a tax twice on those earnings in order to comply with Section 28A, even though the Virgin Islands recognizes the corporation? I think it's apparent that it's a hard sell for the government to justify double taxation and a hard sell for the taxpayer to justify no taxation. You're in the latter position. Exactly. So what I think you have to do, I mean, I think clearly double taxation is not intended. I read the 1986 Tax Reform Act to mean no change in how much you pay, but you pay all the money to the Virgin Islands. Actually, I think the 1986 Tax Reform Act said that from now on you pay money to the United States. And the question is. I said it backwards. You're right. Right. And the question is whether in doing so it imposed a tax obligation on Fallstone, which hadn't existed in the past. So your argument is that prior to the Tax Reform Act, the government did not intend for companies like Fallstone to pay any tax on U.S.-generated income. My argument is that when they enacted Section 28A back in 1954. Right. That's the result that they got because of the way they wrote the statute. They didn't have to write the statute to include companies like Fallstone. They could have limited Section 28A merely to VI individuals and corporations organized in the VI, and that would have made this case a lot easier. But they didn't do it that way. They wrote Section 28A to cover all VI inhabitants. And when they did that, whether they realized it or not, they told a company like Fallstone, just like VI individuals and just like VI corporations, you now start filing in the VI on all of your income from whatever source, whether it's inside or outside the VI, and you pay tax to the VI under the mirrored code. And when they did that, yes, the result of that is that as a foreign corporation to the VI, Fallstone does not have to pay any tax to the VI on its income from sources outside of the VI. I don't know whether they intended that. Maybe they did. Maybe they hoped that companies like Fallstone would invest in the VI. They have certainly handed out tax incentives like that before and since, but the fact is they don't tell us. Maybe it was an oversight, but if it was an oversight, it's been an oversight. It's gone undetected for 32 years, or it went undetected for 32 years, and at some point, frankly, it became the law. And so your viewpoint, then, is that when Congress enacted the Tax Reform Act, why you're saying they couldn't correct the oversight or whatever was the effect of the prior act? I'm saying obviously they could correct the oversight, and they did correct the oversight. Right. And I don't question Congress's ability to do that, but what they did was they corrected the oversight, and they made the correction retroactive for two years, and they excused influential people from the correction. And how were those people excused? I thought the effect was those companies still pay the same amount, but they continue to pay it to the Virgin Island as opposed to paying it to the United States. Now, for a company like Fallstone, well, that's what the Third Circuit held in the BizCap case. But, again, the decision in the BizCap case is based on what I consider to be the Third Circuit's incorrect interpretation of what Section 28A did in the first place. I don't believe that. Is there a court which has interpreted 28A in the way you articulated? No, there isn't. There are only two courts that – well, no, the Third Circuit is the only court that has considered 28A that I know about, apart from the tax court. So you're asking us to rule differently than the Third Circuit on this issue and create a circuit split. That's what you're asking us to do? That's what I'm asking you to do. All right. Yes. Let's turn to the retroactive impact of this statute. The retroactivity period was for two years, more for other companies. It was two years for Fallstone because Fallstone had only been in existence for two years. Had Fallstone been in existence since 1983, it would have been three years. And, frankly, had Fallstone been incorporated in 1978 or 79, and had it been under audit by the Virgin Islands government at the time that this statute was enacted, and had it signed a waiver of the statute of limitations, the retroactivity in this case could have been eight years, from 1986 back to 1978. Now, Carlton says that a retroactivity like that has to be supported by a legislative purpose, which I guess it is because I think raising taxes is always a legislative purpose. But he says the retroactivity also has to – that the legislative purpose has to be furthered by a rational means. In Carlton, the period of retroactivity was short. It was a curative measure. It was designed to correct an obvious oversight, and it was enacted promptly after the oversight occurred, and that rational. And in the Pension Benefit Guarantee Corporation case, the period of retroactivity was five months, and it was designed to present the exacerbation during the legislative process of the problem being addressed, and that's rational. And in most retroactive tax cases, you find the need to adjust for the legislative process, or you find the affirmation or extension of traditional tax policy, and that's all rational. But that's not what we have here. What's your best case where a retroactive tax was held invalid because of its retroactivity? There are not very many cases. There haven't been any cases that upset a statute based on retroactivity since the 1930s. Right. But what all of the cases that have upheld the retroactivity say is that the retroactive provision was a rational one, and usually it's been a one-year retroactive period. In this case, it was two years. It could have been more. It was in a bill that overturns a law that had been on the books for 32 years and that, for all we know, wasn't even an oversight in the first place. It's in a bill that contains a number of adverse changes, none of which are retroactive, and it's in a bill that lets some people off the hook simply because they have the influence in Congress to ask for it. I don't see the rationality of that. If rational means is meant to be the reverse side of arbitrary and capricious, then it strikes me as very arbitrary to change a law that's been on the books for 32 years and then make it indefinitely retroactive without even telling us why. Well, the exception strikes me as more irrational than the retroactivity. I'm sorry, Your Honor? I say I think the exceptions look more irrational than the retroactivity, but we don't have much of a record on why Congress may have accepted those companies. So my suspicions coincide with yours. I think we do have a record on why Congress exempted those companies, and that leads us to the equal protection challenge that we've made in this case. You know, the equal protection argument, it's attractive. The problem is it's too attractive. There are so many provisions in the tax code where it looks like somebody had a friend in the right place, and the law has evolved a very tolerant application of equal protection law to the tax code. That's true. The courts certainly don't like to offset statutes based on equal protection. I don't see where it stops if we go your way on this. I'm sorry? I don't see where it stops if we adopt your equal protection argument in this case. Well, this is a very special case in that not only is there a retroactivity, not only are there special exemptions for people who asked for them, but those exemptions are not to prospective adverse tax legislation, but retroactive tax legislation. So you have both a period of retroactivity, and you have unequal protection against the impact of that retroactivity. And that certainly distinguishes the VI provisions from every other provision in the 1986 Tax Reform Act. As far as I can tell, apart from the technical corrections portion of the bill, none of the provisions, none of the adverse tax changes in the 1986 Act were retroactive. They were all from the date of enactment or prospective. This is the only one that was retroactive in the entire bill, as far as I can tell. And, you know, you could get out of that retroactive period. Explain again why there's retroactivity. I keep thinking that the right way to read this is you pay the same taxes before and after, and the only difference is whether the feds get the money, which I think they turn over to the Virgin Islands under some separate provision, or whether the Virgin Islands gets the money. It goes back to the question that we talked about at the beginning of this discussion. Our position is Fallstone never owed taxes to the Virgin Islands on its business income from sources outside the Virgin Islands. Congress comes along and says, well, you now have to pay tax on business income from sources outside the Virgin Islands to the United States. That's what the 1986 Tax Reform Act says. It says that Fallstone is no longer taxable under Section 28A. Rather, it is taxable the way it was back before 1954 under the unmirrored code. And once Fallstone becomes taxable under the unmirrored code, then it owes tax to the United States on its worldwide income.  But when it did that in this case, our position is Fallstone, under Section 28A, Fallstone did not have a tax liability to the Virgin Islands, and since on its income from sources outside the Virgin Islands. And why is it, again, that before 86 they didn't have a tax liability to anyone for the non-VI income? Because Section 28A tells Fallstone to file its tax returns in the Virgin Islands under the mirrored code. Okay. What language are you actually, what language are you relying upon, the actual language in 28A that you're relying upon to the exclusion of other Well, tell me the language you're relying upon in 28A. I will do that. Let me just get to 28A. That's 48 U.S. Code Section 1642, right? Right. It starts out the proceeds of customs duties, et cetera. Do you see the provided language that it's about two-thirds of the way down? Mm-hmm. Okay. The term inhabited, et cetera, shall include all persons whose permanent residence is in the Virgin Islands. That was Fallstone, and there was no question about whether or not Fallstone was inhabited. And such persons, incidentally, that also includes VI individuals and VI corporations. Right. Okay. Such persons shall satisfy their income tax obligations under the applicable taxing statutes of the United States, which I say are both the mirrored code and the unmirrored code, by paying their tax on income derived from all sources, both within and outside the Virgin Islands, into the Treasury of the Virgin Islands. But what does that mean if it has from both, from sources within and outside the Virgin Islands? What does that mean, then? Because that doesn't really, all that is doing is clarifying what has changed from previous law. That doesn't really mean that a company like Fallstone or a VI individual is taxable on all of his income. There may be lots of reasons why he's not taxable on it. An individual may not be taxable on his income because it's tax-exempt income. A corporation may not be taxable on it because it's a foreign corporation. It's from sources outside the VI. What this is doing is distinguishing from the time when where your income came from determined where you filed before Section 28A was written. If your income was from the Virgin Islands, you filed in the Virgin Islands on that income. If it was from anywhere else, and you also filed in the United States, on your worldwide income. What this language is saying is you don't do that anymore. You file in the VI with respect to all your income. But this language doesn't tell you what you pay tax on. You look to the mirrored code. You look to the tax law in the VI to determine what you pay tax on. This language just tells you. That's your interpretation. That's my interpretation. Is your emphasis on applicable? In other words, are you saying that the only applicable taxing statute would be the Virgin Islands Code? My discussion of applicable was just the Third Circuit says that the only applicable taxing statute is the unmirrored code. And that's not the way a VI person sees it. You would say the only applicable taxing statute is the mirrored code. I would say that language, as used in this context, doesn't even get to that. All this applicable taxing statute is all the statutes that might apply to a VI person. Well, then what is it that confines your liability under 28A then to that which the Virgin Islands would consider taxable? Because what this first clause says is that you satisfy your income tax obligations under the applicable taxing statutes, whatever those obligations are. Whereas the Third Circuit says that's a specific obligation. I say no. It's just whatever obligations you've got. It's a little circular because, I mean, if you start with all your obligations, you had obligations as of the date this was written to the United States and to the Virgin Islands. You had obligations to the United States. You had obligations to the Virgin Islands. And from this day forward, your tax obligations under U.S. law are satisfied by paying tax to the Virgin Islands. The only way. OK, I see. By paying their tax on income, but it's derived from all sources into the Virgin Islands. Is that that? OK, I understand your reading. Thank you, counsel. Thank you. May it please the Court. The issue in this case is whether the retroactive repeal of the Inhabitant Rule resulted in a retroactive increase in taxpayers' tax liability for 84 and 85. This issue was considered by the Third Circuit in Danbury. It was considered by the tax court in Condor. Both courts held that all the Inhabitant Rule did was alter where you file your returns and pay your taxes. You know, what almost jumps from these briefs, though, is that, in fact, none of these corporations have been held liable for taxes on their income. They haven't been paying them. The Virgin Islands hasn't cared. Congress, when it gave this great favor to two corporations, thought it was really giving a favor, not just telling them where to mail their taxes. The taxpayer in Danbury would disagree with you. Pardon? The taxpayer in the Danbury case would not agree with you. No, I guess not. But it sure sounds like these corporations have not been paying taxes for 30 years. Well, you know, in the repeal, in the repeal in the legislative history, Congress made clear that it did not believe that this granted anybody an exemption. But part of the reason for the repeal was the abuses that it had been put to. When you're talking about offshore type things, the ability of IRS, and particularly if you've got Virgin Islands collecting the tax, it was subject to abuses. And that was, frankly, a very good reason to repeal it. It's unfortunate that it turned out that way. But I would not disagree that it was subject to abuses. Congress would agree with you that it was subject to abuses. And that was a good reason. That doesn't mean the abuse means they were doing something they shouldn't have. I understand that point. I guess if they were liable and not paying, then it's not a retroactive increase. I agree. There are people within the U.S. to do that, too. And I'm in the civil part of justice, so I don't have much to do with that. But others do. Well, counsel, what about the two exemptions? What's the rational basis for those two exemptions? Well, first, there's no retroactive increase in tax, which was what I was planning on spending most of my time on. But let's indulge the assumption that there was. What's the rational basis to correct an abuse? You have U.S. corporations paying tax on their U.S. liability with the same U.S. corporations, but they're an evidence of the V.I. not. That discriminates against U.S. corporations. The standard for a retroactive tax. Wait, counsel, I'm not sure I understand your argument, because there were two companies that were exempted from the application of the Reform Act. I misunderstood you. Okay. All right. For those two, one of them is BizCap. And you can't even indulge the assumption that BizCap was relieved from tax, because there's a judgment on the merits saying it was liable for the tax. That's where it paid the tax. Precisely. Remained the same. And the other, I don't know anything about the other corporation. So I'm just at a loss as to say anything about it. The only one I can comment on is BizCap, because we know there was a case, BizCap itself, which was one of the taxpayers who got the exemption. But the exemption wasn't from paying full tax under U.S. tax laws. The exemption was just where you paid. It was allowed to continue to pay U.S. tax under the U.S. Internal Revenue Code over to the Virgin Islands. But the threshold question here is, was this repeal that it increased taxpayers' tax liability retroactively, or was the taxpayer already liable? He was just paying that tax, supposed to be paying that tax, over to the Virgin Islands. And the language of Section 28A is instructive on that, because it starts by talking in terms of the proceeds of the United States tax being paid over to the VI for expenditure by VI. Well, if there's an exemption from tax, there's not going to be any proceeds to pay over. It goes on to talk about inhabitants having to pay tax under UNITE. They satisfy their liability under U.S. law by paying tax and income from all sources within and without the Virgin Islands. You need to read it. See, it's not we don't need to say that language imposes a tax. They need to say that language gives them an exemption. And exemptions are strictly and narrowly construed, and if you read it to me, anything, we regard the entire thing really as just an administrative provision. It's not where you look to determine the taxpayers' tax liabilities. It's where you look to determine where they're paid. But beyond that, if it's susceptible of interpretation of imposing or exempting tax, it imposes one, because it says they pay their tax. Well, what is their tax? It's got to be taxed under the U.S. tax law, because it says their tax on income from VI and non-VI sources, and there wouldn't be a tax on non-VI sources if taxpayer were right. The language would have no meaning. The purpose of the inhabitant rule itself was to enhance the autonomy of the Virgin Islands and their self-sufficiency, and, again, going to the language of the inhabitant rule, that's because proceeds of U.S. tax are going to be paid over so the Virgin Islands can spend those taxes. That enhances their autonomy. There is, and the final point I will make is a transitional rule, which we regard as being very important. What the transitional rule says is for those taxpayers who honor their liabilities and pay tax to the Virgin Islands on worldwide income, as they were required to do, they get a tax credit now that this is repealed for pre-'87 open years. So, in other words, if you're at 86, when the inhabitant rule was repealed, and it was effective for pre-'87 open years, years that were still open, if one of those companies that had open years had paid their proper tax liability to the Virgin Islands, they don't have to pay it a second time to the U.S. If they didn't, then they do have to pay it to the U.S., and the reason that's important is that there would be no need for a tax credit for those taxes that were due for those pre-'87 years unless there was actually a tax liability under the U.S. Internal Revenue Code on worldwide income. There would simply be no need for that credit provision. There are two rulings. I said that was my last point, and I won't trespass on the Court's time by repeating everything we've said in our brief. 80-40 says what I have just said, that the tax liability, and I will say it very, very broadly, from the origin of the corporate income tax to today, every corporation, with their exceptions for some charities, is subject to tax under Section 11 of the U.S. Internal Revenue Code. All the inhabitant rule did was say pay that over to the Virgin Islands during the period of time that the inhabitant rule was in effect. And I realize I haven't used all my time, but if the Court has questions, I'd be happy to try to address them. Thank you, Counsel. Fall Stone v. Commissioner is submitted. We are adjourned until 9 a.m. tomorrow.
judges: Canby, Kleinfeld, Rawlinson